International Trade Commission. Mr. Ferguson. I have a hard act to follow. Thank you, Your Honor. I'll do my best. May it please the Court, Brian Ferguson for Apple. I'd like to start with the Commission's construction of RAM disk. The Commission's construction in this case was unnecessarily narrow in light of the intrinsic evidence. What the Commission essentially did was start with a dictionary definition that had been provided by Kodak's expert and construed the claim based on that definition. But it's the same dictionary you used for other terms, correct? Now that's not the proper claim construction law. Help me out though with respect to this record. You say that the specification only calls it a preferred embodiment to have it be like a computer, like a hard disk. And you have your expert who said it could mean something else in a different context. But never do you explain anywhere what it could mean. What's the alternative? You don't really posit an alternative either in your brief or through your expert or in the spec. So what's the alternative definition? Well, we think it is in the specification, Your Honor. We think it's at column 5, lines 34 to 36, where it states specifically RAM disk 532, column 5, line 34. RAM disk 532 is a memory area used for storing raw and compressed image data. And that's essentially the construction we applied, except as we've stated in our construction, it must also specifically be allocated for storing both raw and compressed and processed image data. But that's a function though, correct? I mean, you're just describing a function. Well, that's what memory is. Memory serves a function. It serves a function of storing data. In this particular case, it's specifically been allocated to store both processed and unprocessed image data. And we don't contest or we don't contradict that there are definitions of RAM disk used in the computer industry, and that's set forth in the dictionary definition, that also can be used to emulate a hard drive. Our point is that when you look at what was said at column 5, and then you take the entire specification as a whole, there's embodiment described where if you have a removable memory and you have the RAM disk, the removable memory is what provides the functionality of emulating the hard drive. And in that case, it's not necessary that the RAM disk also emulate a hard drive. If you have an embodiment where only the VRAM only exists in the camera, then in that case, it absolutely would need to emulate a hard drive. But our point is that the commission went with an unnecessarily narrow construction because there is this additional embodiment where you could have both the RAM disk and an external memory that's clearly disclosed in the specification. In that case, it's not necessary that the RAM disk also emulate a hard drive because that would be the role of the removable memory. Mr. Ferguson, supposing raw data is something different than unprocessed data. Do you live on infringement? If this court determines that raw data does not fall within the definition of unprocessed image data, then the commission's opinion would be affirmed on at least the domestic industry aspect. That's correct. Where's your definition of raw data in the record? Raw data exists in several places. We submitted a dictionary definition, and that was the IEEE dictionary at JA 3002. In the photographic industry, when there's a reference to raw as a data form, is it unprocessed? Yes, there is, and I do have evidence of that. That was a contemporaneous patent from Kodak itself. That's in the record at JA 3538. If I may, I would like to read from that because I think that's exactly going to your question, Judge Wallach. It is going to my question. I mean, the way I read that stuff, it looks like raw data, R-A-W, contains metadata, that it contains pixels with information that can be manipulated, and it looks like it's been processed in some fashion to get to that status. Raw data is a term of art that's used in the photographic industry. The only evidence of record with respect to raw data was the testimony of our expert and the evidence that we submitted. And it shows, this evidence that was submitted shows that in the photographic industry, people frequently equate raw data with unprocessed image data. And more importantly, it also demonstrates this evidence that a person of skill in the art would understand that even though data may have undergone some preliminary processing, it's still called raw and it's still called unprocessed. Those are two different things, raw and unprocessed. I mean, you say it's still called this and it's still called this, but they are two different things. But raw data falls within, in our opinion, falls within the definition of unprocessed image data as agreed to by the parties. What supports that? Let me start with the Kodak patent that I referred to. It's at JA3538. This was in the same timeframe as the 964 patent, Apple's invention. And if we look at column one, it states that some digital cameras in the prior are, and it refers to Kodak cameras. Capture and digitize images from a single image sensor and store the resulting digital data as relatively raw, parentheses, unprocessed data. So here's an example of, in any industry, raw being equated to unprocessed. Now, the next step is the important step, because at the bottom of column three of this patent, it describes that a processor will perform certain preliminary processing of the digital data. And it lists some of the things that will be performed preliminarily, blemish or defect concealment and white balance. It goes on at the top of column four to say that this preliminary process digital image data is described herein as raw data. So here's an example used in the industry. There couldn't really be a better example than a Kodak patent, because certainly at the time, Kodak was the pioneer in the photographic industry, of raw data being called unprocessed data, even though it has still undergone some preliminary processing. And that's exactly why we think that the Commission needed to check the specification and determine that when the patent used the term unprocessed in the claims, the patentee meant raw data, and in the industry, raw data is understood that it can undergo some form of preliminary processing, still be considered raw, still be considered unprocessed. But there's evidence other than this patent. I mean, obviously, Kodak could be its own lexicographer. So why didn't the same kind of definitional information show up in your patent? Well, because it didn't necessarily need to be, because it's a term of art that's used in the photographic industry. As our expert, Dr. Delp, testified that people in the photographic industry understand that raw data is the same as unprocessed, and that it can undergo some preliminary processing. But then Dr. Delp went on to concede that it constituted processing. What happened to that data? Sure, and the point there is that, as, for example, this Kodak patent says, if it undergoes preliminary processing, you have to understand that it's undergoing processing. But that doesn't take it outside the definition of unprocessed image data within the industry. Why didn't you ask to include this pre-processed or preliminary processing or raw data language in your stipulated construction? Isn't that part of your problem here? The reason that didn't… Related to something that came back to haunt you. Well, the reason that didn't occur is because we believed at the time that people in the art understood that unprocessed image data was raw data. That's what's described in the specification, so we didn't believe it would be necessary to provide that in the stipulated definition. Did you then ask for some construction of the term at a later point in time? Well, and indeed we did, Your Honor. In our pre-trial brief, it became clear that Kodak was going to take a very narrow view of what unprocessed data was. And in our pre-trial brief, Apple cited and argued that the agreed-to definition of unprocessed image data needed to encompass raw data as disclosed in the specification. And we've cited that. The pre-trial briefs are in the record. It's at JA10083. But that was more an argument to say that this term encompasses raw data as opposed to say, we need to go back and reconstruct this because there's something that has been left out of the consideration. I mean, you didn't do that, did you? No, we didn't do that, Your Honor, because what we did was we made the argument at the hearing when it became clear that this was going to be the position to take, that Kodak was going to take, that we needed to demonstrate that raw data falls within the definition of unprocessed image data, and that's exactly what we did. That at the hearing, we submitted this evidence, the Kodak patent. We submitted, obviously, Dr. Delp's testimony to demonstrate that in the photographic industry, raw data may be considered unprocessed even though it has undergone some amount of preliminary processing. And even Kodak's expert, when he was cross-examined, admitted that there were documents in the record where preliminary processed data is still called raw data, and that's part and parcel of what's used in the industry. Can data be processed but uncompressed? It could be processed but uncompressed, yes, Your Honor. That's possible. You need to prevail on every single one of your arguments to prevail here, correct? That's correct, Your Honor. So if we reach one, any one, pluck one out and rule against you, that's the end of the inquiry, right? We have an uphill battle here, I recognize that. And there would be no reason for us to reach the other issues? Your precedent has done that in the past, that's correct, Your Honor. I don't mean to depress you. Is the iPhone a product of the domestic U.S. industry? That's correct, Your Honor. The iPhone is designed, and it's not manufactured in the United States, but it's designed, all the research and development for the iPhone is done in the United States, and that would qualify as a domestic industry product. All right, let's hear from the Commission, and we'll save you rebuttals, Mr. Davidson. Thank you, Your Honor. Mr. Hughes. Good morning, and may it please the Court. The Commission has multiple independent bases for its no-violation determination. With respect to infringement, the Commission found that Kodak's accused cameras do not infringe the asserted claims of the 964 patent. The Commission also found that, quote, Apple failed to show that its domestic industry product, the iPhone, practices the asserted claims of the patent. Now, coming back to the unprocessed… We don't need to reach that question, though, if we conclude that there's no showing of infringement, is that right? That's correct. That's right, you don't have to. Now, with respect to the unprocessed versus raw, what Apple's counsel is not mentioning is the issue is one of digital processing, not just any kind of processing. And there's no way in the 964 patent where digital processing is referred to as raw image data. So even if Apple's argument is correct, which the Commission does not concede, that unprocessed is the same as raw, it would have no bearing on the Commission's determination. Because the patent does not teach that raw image data includes within its scope data that has undergone any kind of digital processing. So you're differentiating between the concept of processing generally and digital processing? That's correct. Because in the patent, the patent uses raw image data, the 964, to refer to image initially captured by the camera and image that undergoes analog to digital conversion. But you agree that in the arts, that the concept that raw data would have some kind of generalized processing was well known? No, we do not concede that. The evidence doesn't bear that out. But the evidence in the record suggests that we have disputed evidence from Codex counsel and Apple's counsel. Apple's counsel actually conceded at trial that raw image data means unprocessed image data. And then he went on to say that, but it can also include some preliminary processing within the scope. Codex counsel did not agree. He referenced the IEEE dictionary which says raw image data is the same as unprocessed image data. I understand that, but the Commission's position as it relates to what the state of the art showed is what? The Commission didn't make a finding on that. The Commission's position is that raw image data is that the claims construction requires image data that has not undergone digital processing. The Commission's view is that the record evidence shows that image data does undergo digital processing before being stored in the frame back of the RAM disk. The Commission's view is that infringement wasn't shown. Okay, let's talk about RAM. I mean, how do you get around the fact that the patent specifically states that the definition that was adopted by the Commission was a preferred embodiment? It's the only embodiment. What Apple points to to construe RAM disk is a characteristic of a RAM disk in the digital camera field. The patent explains that with digital cameras, the RAM disk can do more than just being a hard disk drive. The patent doesn't teach that in the digital camera field, RAM disk has a different meaning than it has in the computer field. In particular, in the 964 patent, the RAM disk resides in the computer of the digital camera. So the ALG's construction is entirely consistent with the court's precedent that he had to give it an ordinary and customary meaning as used in the computer field. Okay, anything else you need to tell us? Otherwise, we'll hear from Mr. Berry. The only thing else I have to say is that the court for Apple to win, they have to win on every single issue. And substantial evidence supports the Commission's decision. Thank you. May it please the Court. Good morning, Your Honor. It's Alan Berry from the Intervenor and Eastman Kodak Company. Your Honor, I can go with whatever issue you care to address at this point, but I do want to echo the fact that there are five or six independent grounds of non-infringement depending on how you frame the issues. Any one of which is affirmed by this court would affirm the Commission's final determination. What do you think is the strongest point? I think they're all strong, Your Honor. Of course you do. But I would prefer to go with the substantial evidence issues if given a choice. Of which there are at least five of those. And I think one of the arguments here on raw data is interesting, but it's a substantial evidence issue. They claim construction was already made. Then you go on to your second step. And your second step is applying that construction to the acute subject matter. Asking the question, does the construction define that acute subject matter or not? You do not introduce into the second phase, and the Commission made this point, intrinsic evidence. You don't start asking yourself, what does this agreed construction mean? Maybe we need to look at the patent. You should have done that. That should have been part of the claim construction process. It's not part of the factual application of the construed claim term to the subject matter. Was there an opportunity to go back and seek reconsideration of even the stipulated claim based on a mistaken fact or mistaken understanding of how the parties were interpreting it? Well, Apple may have been mistaken. Kodak was not, nor do we think the Commission was. In fact, we submit that this issue came up much earlier in the case in the course of the deposition of Apple's expert, Dr. Delp. So would there have been an opportunity to go back and to ask for an actual construction as opposed to, you know, to ask to withdraw the stipulation? I don't know whether procedurally there would have been such an opportunity. I know that Apple did not seek such an opportunity once the issue became known during Dr. Delp's deposition. But we had several agreed terms. You know, image data was another one. And so we were somewhat surprised here to find out that Apple now wanted a reconstruction in the course of the trial of a term that they had agreed to. But I'm raising this because this is really a substantial evidence question. It's not a de novo question. They had agreed to the construction, and now they're quarreling with how that construction is applied to the iPhone and the accused Kodak cameras. Do you differentiate as well between processing generally and digital processing within the meaning of the patent? Well, the patent does show processing from an analog standpoint and processing from a digital standpoint. What we're talking about is digital processing. That's what unprocessed digital image is all about. You're processing digital image, digital data, not analog data. And we pointed that out in our posting brief that Apple was pointing to a portion of the specification that was really referring to analog data, not digital data. Unless your honors have any other questions for me on any of these issues, which I'd be happy to address. Okay. Thank you, Mr. Roberts. Let me just push you a little on the rod. I'm under the impression that the image sensor responsibly generates a set of raw image data representing the captured image. And that at that point, pixels have been manipulated on a pixel-by-pixel basis to represent the image. And that there is some manipulation going on at that point. I mean, one of the things you talk about in here and one of the other issues discussed is the testing of the sensor and getting all black. Right. Well, you've got something here that isn't all black. It represents pixels on various grades in that grid. And I read that as having been manipulated in some fashion. Is that not correct? No, it's not correct, your honor, because you're talking about the bad pixel map with black. Oh, I'm comparing it with a bad pixel map. I'm talking about raw data, R-A-W. And my impression is that raw data has been manipulated. That it has undergone some sort of processing to get to being raw data. Well, there's no question that raw data is data that has undergone some kind of processing. And that's why raw data does not meet the definition of unprocessed image data. That's my point. And that is my point as well, your honor. Okay. Can I ask a question? Maybe you can help me or maybe I'm going to have to ask your friend on the other side. The patent seems to draw a distinction between the RAM and the DRAM. And then the patent talks about storing in the buffers as well as in the DRAM. And yet the figures show the buffers as being part of the DRAM. Right. So they're storing in both and yet one is part of the other? Well, that's part of Apple's problem with this case. This patent is about a unified memory architecture. So if you look at figure five, the idea here, and by the way, these were all computer concepts. What Apple admitted in their opening brief is we didn't set out to design a camera. We set out to design a computer that had camera functionality. So what they did, they introduced the notion of we're going to have a unified memory architecture. And within that DRAM, we are going to select out a memory area for frame buffers. We're going to select out an area for RAM disks. And that's the way the claims read. You notice memory device says comprising frame buffers for storing unprocessed image data and a RAM disk for storing both processed and unprocessed image data. Right. So the problem for Apple in the case is that when you looked at the Kodak cameras, you had a block of DRAM over here, which they either called memory device or RAM disk according to their definition of RAM disk. But then the frame buffers were over here, physically distinct. They weren't part of the same memory architecture. And hence one of the problems they had with memory manager as well. They couldn't find that the memory manager was actually allocating space within the memory device because the frame buffers were way out here somewhere else. So I don't know if that helps. It does. Thank you. Thank you. Any more questions? Good. Thank you, Mr. Berry. Mr. Ferguson. Thank you, Your Honor. A few points. In response to the questions that were asked of the commission, whether or not the 964 patent has a specific embodiment that shows unprocessed or processed image data being called raw, that isn't the point. The point is that as used in the industry, it's known that raw data sometimes undergoes preliminary processing. And as this Court has held many times, it's not necessary for a patentee to disclose what's well known in the art. So as we demonstrated through Dr. Delp's testimony through the Kodak patent, that's the industry norm, that even though data may undergo some preliminary processing, it's still called raw, it's still considered unprocessed until the processing has been completed. The patent teaches that raw data is equated to unprocessed data. That's shown. We set that forth in our reply brief where we put a table in that compares where in the specification, where in the claims, that's set forth. Now, with respect to whether or not the commission needed to consider the intrinsic evidence, even in light of an agreed-to definition, we believe, as we pointed out on our blue brief at page 50, there still is a requirement that a fact finder or a court consider and make sure that they are applying even an agreed-to definition consistently with what the intrinsic evidence is. In fact, the commission did that with another agreed-to term for the patent that we didn't appeal. That was the term image processors, and you can see that at JA 140 of the commission opinion. The commission actually checked to confirm that the party's agreed-to definition of image processors was consistent with the intrinsic evidence, but refused to do that for the 964 patent with respect to the term unprocessed image data. But by the time you get here, there's a waiver issue, is there not? I mean, yes, we treat claim construction as a question of law, but we can only deal with issues that are preserved for appeal. And if you stipulated to a construction, how have you preserved your objection to that construction? Because it was very clearly, it became a question by the time we got to trial, even before trial, it was clear that Kodak was taking a different position with respect to what the meaning of unprocessed image data was. Did you move to withdraw your stipulation? We didn't move to withdraw the stipulation, but we set forth specifically in the pre-trial briefs that, look, there's an issue here with respect to the definition of unprocessed image data. The parties are construing it differently. And so that's what makes this case different from, for example, the Tessera case that was cited in the commission brief and the Kodak brief. There, the court, the commission actually checked and confirmed that the stipulated definition, or the definition that was agreed to by the parties, was consistent with the intrinsic evidence. And that Tessera's position later, after the hearing was over, was inconsistent with the intrinsic evidence. But here it's the exact opposite. Apple's position is what's consistent with the intrinsic evidence because Apple's position equates raw data with unprocessed image data. And that's the check that the commission should have done with respect to the stipulated definition because it was clear that the parties had a different view as to what that definition meant. But even if we agree with you on that point, but you agree that all of the others, other than RAM, are substantial evidence considerations? I don't agree with that, Your Honor. Okay. There's two points on that. There was the term memory manager, which is a claim term. Now, the parties both said the ordinary definition of memory manager should apply. But in their briefs, and at the hearing, the parties had differing views as to what memory manager actually meant, what the ordinary meaning of it was. And, in fact, it's clear from the commission's analysis, if you look at the commission opinion at JA329 and then you look at JA293, both of those are the commission opinion. It's very clear the commission has said, well, Kodak says memory manager means this. Apple says memory manager means something different. And the commission resolved that as a matter of claim construction. So there wasn't a waiver of that position either with respect to what the ordinary meaning of memory manager was. The same holds true for sets of image data, which relates to the power management and the interface terms. Once again, there was a dispute over the ordinary meaning of sets of image data. And the parties briefed that. They presented their positions at the hearing, then briefed it afterwards. So that's different from the Broadcom case and the Lazar case that are cited in Kodak in the commission's brief, because there what had happened was the parties that were challenging the construction didn't offer a claim construction position until after the case was over. The commission didn't exactly say that you had differing interpretations. They said Apple, amidst the limiting words said, it clearly appears in the element. Right, but if you check at JA293, the commission analyzes what Apple's position was with respect to the term memory manager. And it's very clear that we had a definition that we were providing and that this isn't the first time on appeal or the first time after the case was over where we said, wait a second, we don't like the court's position with respect to memory manager. That was a dispute that was raised at the hearing. Both parties submitted what they believed was the proper construction of that term. And if you look at the intrinsic evidence on that, the plain meaning, we just think the commission got that wrong because the memory manager only needs to allocate to the memory device. The memory device can include the frame buffers and the RAM disk. But as long as you're allocating to something in the memory device, you're allocating to the memory device. The commission read that as saying you have to allocate to everything that's listed in the memory device, the frame buffers and the RAM disk. That's just inconsistent with the language of the claim. Okay. Any more questions? Any more questions? Okay. Thank you, Your Honor. Thank you, Mr. Ferguson. Thank you. Here's Mr. Berry. The case is taken under submission.